UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EMD MILLIPORE CORPORATION and MERCK KGAA, DARMSTADT, GERMANY, | : : : : | |
| Plaintiffs, v. | : : : : | Civil Action No.: 1:20-cv-10244 |
| HDI-GERLING AMERICA INSURANCE COMPANY, | : : : : | |
| Defendant. | : | |

Plaintiffs EMD Millipore Corporation ("EMD") and Merck KGaA, Darmstadt, Germany

("MKDG"), by and through their undersigned counsel, file this Complaint against HDI-Gerling

America Insurance Company ("HDI"), and allege as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for declaratory relief and damages for breach of contract and

willful violation of Massachusetts General Laws, Chapter 93A.  It arises out of HDI's

repudiation and material breach of its contractual obligations under two insurance policies—a

primary policy (the "Primary Policy") and an umbrella policy (the "Umbrella Policy")—that

HDI sold to EMD in 2016, which cover various EMD affiliates, including MKDG.  In exchange

for substantial premiums, the Policies collectively provide $30 million in insurance coverage for

a variety of claims including, of relevance here, claims alleging "personal and advertising injury

liability."

2.      The Policies provide expansive coverage for "advertising injury liability," which is

broadly defined to include, among other things, injury arising out of: (i) the "[o]ral or written

publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;" or (ii) the "[u]se of another's advertising idea in your 'advertisement.'"

3.      In 2016, Merck & Co., Inc. ("Merck & Co."), a U.S.-based company with which MKDG has a common history, filed suit against MKDG in the United District Court for the District of New Jersey (the "New Jersey Litigation").  Merck & Co. alleged that MKDG had engaged in a number of advertising activities in the United States that purportedly harmed consumer perception of Merck & Co.'s products and services, diluted the value of Merck & Co.'s brand, and caused a diminution in Merck & Co.'s goodwill.   Merck & Co. also alleged that MKDG's advertising activities emulated Merck & Co.'s own advertising ideas.

4.      Merck & Co.'s allegations give rise to the types of claims the Policies expressly cover and so MKDG promptly gave notice to HDI and requested coverage for MKDG's defense costs.

5.      Ignoring Merck & Co.'s allegations, basic tenets of contractual interpretation, precedent, and common sense, HDI repeatedly rejected MKDG's request for defense coverage. HDI's refusal to provide coverage has saddled MKDG with substantial defense expenses—now approaching $30 million—that should have been borne by HDI all along.

6.      Plaintiffs now file this Complaint to enforce their contractual rights and seek redress for the significant harm HDI's actions have caused MKDG, and to remedy HDI's unreasonable refusal to cover MKDG's defense costs.

## THE PARTIES

7.      Plaintiff EMD is a Massachusetts corporation with a principal place of business in Burlington, Massachusetts.  EMD is a leading supplier for companies involved with the research, development, and production of biotechnology and pharmaceutical drug therapies.  EMD is indirectly owned by Plaintiff MKDG, a German multinational pharmaceutical, chemical and life sciences company.  MKDG's principal place of business is located in Darmstadt, Germany.

8.      Upon information and belief, Defendant HDI has its principal place of business and is incorporated in Illinois.  Upon information and belief, at all material times HDI has conducted substantial business within the Commonwealth of Massachusetts, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in Massachusetts.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### I.      THE HDI POLICIES

11.      EMD purchased two claims-made insurance policies issued by HDI:  (i) the Primary Policy, policy number GLD10697-08; and (ii) the Umbrella Policy, policy number CUD10698-08.  In all relevant respects, the Umbrella Policy follows form to the Primary Policy, meaning that the terms and conditions that govern the parties' rights and obligations are materially the same between the Policies.  The Policies are attached hereto as Exhibits A and B.

Both provide coverage for claims made during the time period January 1, 2016 through January 1, 2017.

12.     MKDG is a Named Insured in both Policies.  *See* Primary Policy, Named Insured and Retroactive-Dates Endorsement; Umbrella Policy, Manuscript Endorsement #007.

13.     The Policies contains a number of insuring agreements, including, of relevance here, one for "personal and advertising injury liability."  *See* Primary Policy § I, Coverage B; Umbrella Policy § I, Coverage B.

14.     The Policies define "personal and advertising injury" broadly, as

> [I]njury . . . arising out of one or more of the following offenses:
> *****
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . . [or]
> *****
> f. The Use or another's advertising idea in your "advertisement."

Primary Policy § VI ¶ 14; Umbrella Policy § VI ¶ 14.

15.     As is customary, the Policies also set out a number of exclusions from coverage, including for "personal and advertising injury" arising out of

> b. . . . .oral or written publication, in any manner, of material, if done by or at the direction of the insured *with knowledge of its falsity*; [or]
> *****
> i. . . . . the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

Primary Policy § I, Coverage B, ¶ 2(b), (i); Umbrella Policy § I, Coverage B, ¶ 2(b), (i) (emphasis added).

16.     By its own terms, however, the "Infringement of Copyright, Patent, Trademark or Trade Secret" exclusion does *not* extend to "the use of another's advertising idea in [MKDG's]

4

'advertisement'" except insofar as the "advertisement" infringes a "copyright, trade dress or slogan." *See* Primary Policy § I, Coverage B, ¶ 2(i); Umbrella Policy § I, Coverage B, ¶ 2(i).

17.    The combined limit of liability for claims alleging "personal and advertising injury liability" is $30 million—$5 million under the Primary Policy and $25 million under the Umbrella Policy.  The Primary Policy has a deductible of $100,000 per occurrence. *See* Primary Policy, Deductible Liability Insurance Endorsement.

## II.    **THE NEW JERSEY LITIGATION**

18.    On January 15, 2016, Merck & Co. and an affiliated company filed a complaint against MKDG in the U.S. District Court for the District of New Jersey.  Merck & Co.'s complaint ("Compl.") is attached hereto as Exhibit C.

19.    At bottom, Merck & Co. alleges that, notwithstanding certain contractual undertakings MKDG previously made to Merck & Co., MKDG has engaged in a number of advertising activities that allegedly impact consumers' perception of Merck & Co.'s products and services, dilute the value of Merck & Co.'s brand in the United States, and lessen Merck & Co.'s goodwill.

20.    While many of Merck & Co.'s allegations are directed to MKDG's purportedly unauthorized use of Merck & Co.'s trademarks, *e.g.*, "MERCK," numerous allegations extend beyond mere trademark infringement.  For instance, and of most relevance here, Merck & Co. alleges that MKDG has engaged in two advertising campaigns—the so-called "Original" Campaign and the so-called "125 Years" Campaign.

21.     With respect to the "Original" Campaign, Merck & Co.'s complaint alleges that

> KGaA has encouraged employees at all levels, including those in
> the U.S., to promote KGaA as the "*Original*" as shown below on
> the screenshots from KGaA's U.S. facing website. . . .
>
> Senior personnel from KGaA have also perpetuated this
> misleading notion that KGaA is the "*Original Merck*" in
> presentations and in interviews in the United States, as illustrated
> by an interview with Karl-Ludwig Kley, Chairman of the
> Executive Board of KGaA in the USA on September 22, 2015, in
> which he states, "Well, before turning to answer your question let
> me say this.  We are currently in the United States, so whenever I
> refer to Merck, which is my company, I mean KGaA, Darmstadt,
> Germany.  *The Original Merck*."
>
> . . . [p]ersonnel for KGaA and/or its U.S. operating companies
> introduced themselves at a 2015 Bio-Pharma Sustainability
> Conference as the "*Original Merck*" and then referred to Merck as
> KGaA's "*younger brother/sister*" suggesting some affiliation
> where there is none.

*See* Compl. ¶¶ 61-63 (emphasis added).

22.     With respect to the 125 Years Campaign, Merck & Co.'s complaint alleges that

> KGaA has started an advertising campaign which centrally features
> the false statement "125 Years in the U.S."  Not only is this
> statement literally false and misleading . . . but such campaign is
> accompanied by prominent unauthorized uses of MERCK as
> depicted below.
>
> *****
>
> KGaA ran an advertisement for The 125 Years Campaign at the
> 2015 BIO International Convention in Philadelphia, which, upon
> information and believe, hosted 20,000 attendees and at which
> KGaA also had a booth.  The KGaA ad prominently featured the
> false and misleading statement, "125 Years in the U.S.," and
> featured infringing and unauthorized use of MERCK as shown
> below.
>
> KGaA also ran a false and misleading advertisement for The 125
> Years Campaign in the Washington Post, claiming that KGaA has
> executed a "great business strategy" for 125 years and that KGaA
> "has been asking [questions] relentlessly for 125 years here in the
> US" as depicted below.

*See* Compl. ¶¶ 65, 68, 69.

23.     Merck & Co. has itself engaged in an advertising campaign that touts Merck & Co.'s 125-year history of innovation in the field of medicine.



24.     Merck & Co.'s complaint expressly alleges that MKDG's advertising efforts have confused "consumers into believing that MKDG and its goods and services are produced by or otherwise associated with Merck [& Co.]." Compl. ¶ 64.  For instance Merck & Co. alleges that

> [A] U.S. based media source reporting on KGaA's collaboration with Pfizer regarding the initiation of Phase III First-Line Trial of Avelumab in Patients in non-small cell lun[g] cancer (MSCLC) mistakenly referred to KGaA as "Merck". . . .
>
> [Additionally] another U.S. based media source mistakenly reported in October 2016 that 'Merck & Co. Inc. (NYSE: MRK) announced the relaunch of its brand identity.  The fundamental revision of the visual appearance as well as the introduction of a new logo reflects the transformation into a global science and technology company.'  Instead, it was KGaA who announced the launch of its brand identity in October 2015.

Compl. ¶¶ 77-78.

25.     Merck & Co.'s complaint also expressly alleges that the purportedly false association created in consumers' minds between Merck & Co. and MKDG has saddled Merck

& Co. with MKDG's alleged failures, thereby harming consumers' perception of Merck & Co.'s goods and services.  For instance, in paragraph 79 of its complaint, Merck & Co. alleges that news reports "mistakenly attributed KGaA's 'less than impressive' results to Merck & Co." Additionally, in paragraph 80, Merck & Co. alleges that "[n]ews reports reporting negatively on KGaA's Avelumab drug, titled 'Avelumab in Lung is Unimpressive," also mistakenly associated Merck, its distinctive Merck corporate logo and Merck & Co, Inc.'s ticker (NYSE: MRK) in a story about Avelumab, KGaA's anti-PD-L1 immuno-oncology therapy (which therapy is a rival to Merck's anti-PD-1 immunotherapy)."

26.     Merck & Co.'s complaint asserts 11 causes of action, two of which are predicated on allegations of "false advertising," rather than allegations of trademark infringement or breach of contract.  Specifically, in Counts 8 and 9, Merck & Co. asserts that

> KGaA, through The 125 Years Campaign, has used in commerce false or misleading descriptions of fact and/or false or misleading representations of fact, in connection with its goods and/or services, which, in commercial advertising and promotion, misrepresent the nature, characteristics or qualities of KGaA's goods, services, and/or commercial activities, in violation of [Federal Law and New Jersey Law].

27.     Counts 8 and 9 incorporate by reference *all* of the factual allegations earlier set out in Merck & Co.'s complaint.  *See* Compl. ¶¶ 138, 145.

## III.     HDI'S UNREASONABLE DENIAL OF COVERAGE

28.     While MKDG denies all of Merck & Co.'s allegations, on January 29, 2016, MKDG requested that HDI provide defense coverage for the New Jersey Litigation.  MKDG's request for coverage identified Counts 8 and 9 of Merck & Co.'s complaint as covered claims.

29.     In communications dated February 15, April 15, April 25, and July 8, 2016, HDI rejected MKDG's request.  HDI took the position that no coverage is available because Merck & Co.'s "allegations only allege that Merck [KGaA, Darmstadt, Germany] is misrepresenting *its*

8

*own products and services.*   They do not mention or implicate MSD's products or services." July 8, 2016 HDI Ltr. at 4 (emphasis added), attached hereto as Exhibit D.

30.     HDI's coverage position ignores basic tenets of contract interpretation and insurance law and relies on a glaring misreading of Merck & Co.'s complaint, including Merck & Co.'s allegations:

> The false statement "125 Years in the U.S." suggests that KGaA has been operating in the United States for over a century, when in fact, it is not KGaA who has such a long-established presence in the United States, but, instead, Merck.

> Such statement is likely to deceive consumers as to KGaA's history in the United States and *trades off of the good will associated with Merck, through lessening such goodwill and its association with Merck.*

Compl. ¶¶ 66-67 (emphasis added).

31.     Despite numerous efforts to change HDI's mind, HDI has persisted in its wrongful denial of coverage, leaving Plaintiffs no choice but to commence this action.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT:  DUTY TO DEFEND

32.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     The Policies are valid and enforceable contracts under which Plaintiffs have an interest.

34.     Plaintiffs are Insureds under the Policies.

35.     Pursuant to the terms of the Policies, HDI is obligated to defend MKDG in the New Jersey Litigation and/or reimburse MKDG's defense costs.

36.     As detailed above, the New Jersey Litigation gives rise to one or more "offenses" covered under the Policies in that Merck & Co. alleges that MKDG's advertising activities have

(i) disparaged Merck & Co.'s goods, products or services; and (ii) used Merck & Co.'s own advertising ideas.

37. Plaintiffs have given HDI timely notice under the Policies of the New Jersey Litigation.

38. Plaintiffs have fully complied with all terms, conditions and prerequisites to coverage set forth in the Policies, or have been excused from compliance with such terms, conditions or prerequisites.

39. HDI's rejection of Plaintiffs' claim for coverage under the Policies constitutes a breach of contract.

40. As a result of that breach, Plaintiffs have been and will continue to be damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF – DECLARATION THAT THE NEW JERSEY LITIGATION IS A COVERED CLAIM

41. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. The Policies are valid and enforceable contracts under which Plaintiffs have an interest.

43. Plaintiffs are Insureds under the Policies.

44. As detailed above, the New Jersey Litigation gives rise to one or more "offenses" covered under the Policies in that Merck & Co. alleges that MKDG's advertising activities have (i) disparaged Merck & Co.'s goods, products or services; and (ii) used Merck & Co.'s own advertising ideas.

45. Plaintiffs have given HDI timely notice under the Policies of the New Jersey Litigation.

46.     Plaintiffs have fully complied with all terms, conditions and prerequisites to coverage set forth in the Policies, or have been excused from compliance with such terms, conditions or prerequisites.

47.     HDI has denied Plaintiffs' request for coverage, instead taking the position that the New Jersey Litigation is not a covered claim under the Policies.

48.     An actual and justiciable controversy exists between Plaintiffs and HDI concerning whether the New Jersey Litigation gives rise to a claim under the Policies.

49.     Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of Plaintiffs and against HDI, declaring that the New Jersey Litigation gives rise to a Claim under the Policies.

## THIRD CLAIM FOR RELIEF -- VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 176D AND CHAPTER 93A

50.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     At all times relevant hereto, Plaintiffs and HDI were engaged in trade or commerce within the meaning of Massachusetts General Laws Ch. 93A.

52.     In knowingly disregarding its duty to provide defense coverage under the Policies, HDI engaged in "unfair claims settlement practices" and clear violations of Massachusetts General Laws, Chapter 176D § 3(9), which thereby constitute violations of Massachusetts General Laws, Chapter 93A § 11.

53.     Further evidencing HDI's unfair and deceptive trade practices, HDI's conduct constitutes willful and knowing violations of Section 3 of Massachusetts General Laws Ch. 176D, including, but not limited to:

   (a)     Misrepresenting the benefits, advantages, conditions, or terms of the Policy;

11

(b)  Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(c)  Refusing to pay claims without conducting a reasonable investigation based upon all available information; and

(d)  Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

54.  In addition to the foregoing specific breaches of statutory duties set forth in M.G.L. c. 176D, HDI's conduct as alleged in this Complaint and which will be proven through discovery and trial, constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of M.G.L. c. 93A §2 and actionable under §11.

55.  HDI's unfair and deceptive acts and practices at issue took place and continue to take place primarily and substantially within the Commonwealth of Massachusetts, and have resulted in harm, including a loss of money and property, to Plaintiffs.

56.  As a result of its willful, unfair and deceptive acts and practices in violation of Massachusetts General Laws Ch. 93A, Section 11, HDI is liable to Plaintiffs for double or treble actual damages and Plaintiffs' attorneys' fees in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

(a)  On the First Cause of Action, Plaintiffs request that the Court enter a judgment in favor of Plaintiffs, directing HDI to honor its contractual obligations;

(b)  On the Second Cause of Action, Plaintiffs request that judgment be entered declaring that the New Jersey Litigation gives rise to a Claim under the Policies;

(c)  On the Third Cause of Action, Plaintiffs request that judgment be entered against HDI, awarding Plaintiffs damages in an amount to be determined at trial, plus attorneys' fees incurred in prosecuting this action;

12

(d)     On all Causes of Action, Plaintiffs request attorneys' fees, and pre- and post-judgment interest to the extent permitted by law; and

(e)     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: February 7, 2020                    Respectfully submitted,

                                           /s/   Michael John Miguel
                                           Michael John Miguel (BBO #545942)
                                           mmiguel@mckoolsmith.com

                                           Robin L. Cohen (*pro hac vice pending*)
                                           NY Bar No. 2254019
                                           rcohen@mckoolsmith.com

                                           Adam S. Ziffer (*pro hac vice pending*)
                                           NY Bar No. 2737252
                                           aziffer@mckoolsmith.com

                                           Radu A. Lelutiu (*pro hac vice pending*)
                                           NY Bar No. 4252656
                                           rlelutiu@mckoolsmith.com

                                           MCKOOL SMITH, P.C.
                                           One Manhattan West, 50th Floor
                                           New York, New York 10001
                                           Tel: (212) 402-9400

                                           *Counsel for Plaintiffs EMD Millipore*
                                           *Corporation and Merck KGaA, Darmstadt,*
                                           *Germany*